*Superior Court*, 382 Mass. 309, 313 (1981) (holding that a clerk and an assistant clerk were "public employees" immune from liability for negligent acts committed within the scope of their employment). Kennedy has not alleged that defendants Ashe or Conklin were ever acting outside the scope of their public duties, and thus, they are entitled to the statutory immunity set forth in Chapter 258. Indeed, defendants Ashe and Conklin pleaded Chapter 258 immunity as an affirmative defense in their answer. *See* Defendants' Answer to Complaint. (App. 37-38) Accordingly, all claims asserted against defendants Ashe and Conklin under Chapter 258 must be dismissed.

> 3. **UNDER THE "OPEN AND OBVIOUS DANGER" RULE, THE DEFENDANTS OWED NO DUTY OF CARE TO KENNEDY TO WARN OF OR ELIMINATE THE DANGER OF JUMPING OFF HIS TOP-BUNK ONTO A SWIVELING STOOL.**

Kennedy's tort claims are precluded for the above-stated reasons, i.e., that he failed to properly present his tort claims pursuant to G.L. c. 258, § 4, and that the defendants are immune from liability pursuant to G.L. c. 258. To the extent, however, that Kennedy's state claims are viable and could be construed to assert a claim that the defendants' negligence in failing to provide steps for the bunk caused him to fall, the defendants are entitled to summary judgment. Kennedy claims that he fell while exiting his bunk when he "jump[ed] to a stool" and the stool moved. Kennedy Deposition Tr. 30-9-15 (App. p. 82). Although he initially claimed that "[t]he only way to get down from the top bunk is to jump down to a swivel seat which is attached under the desk," Kennedy later stated that he chose jumping onto the stool as his means of accessing the top bunk because he

had watched other inmates and "when you watch people . . . you do what they do." Plaintiff's Answer to Interrogatory 8 (App. p. 44); Kennedy Deposition Tr. 77-12-13 (App. p. 94). He offers no rationale explanation for not using the bottom bunk other than that he does not believe that he could find a place to step without "step[ping] on another person." Kennedy Deposition Tr. 73-3-8 (App. p. 93). Kennedy further admits that he was aware at the time of his fall that the stool he chose to jump onto from the top bunk was not stationary and could swivel underneath the desk in his cell. *See* Kennedy Deposition Tr. 71-9-11 (App. p. 92).

The inherent dangers of jumping off an upper bunk, and then choosing to use what Kennedy knew to be a non-stationary object as a step are open and obvious to any reasonable person of average intelligence. When a danger is open and obvious, Massachusetts courts have ruled that defendants are not responsible for injuries suffered from such blatant hazards. *See O'Sullivan v. Shaw*, 431 Mass. 201, 204, 726 N.E.2d 951, 955 (2000). ("It would be obvious to a person of average intelligence that a swimming pool must have a bottom. ... We have no doubt that an ordinarily intelligent adult in our society would be aware that the bottom of a swimming pool is a hard surface, liable to cause injury if one were to strike it with one's head. Moreover, the design and layout of the defendants' pool would have indicated to a person of average intelligence that the end into which the plaintiff dived was not intended for this activity.")

Here, Kennedy chose to jump from a top-bunk onto a stool designed to swivel instead of using the lower, stationary bunk as a step. As such, the defendants did not

cause Kennedy's fall and should not be found negligent for failing to warn Kennedy not to use the stool as a step or in not providing stairs to the upper bunk.

Negligence is the failure to exercise that degree of care which a reasonable person would exercise under the circumstances. *Morgan v. Lalumiere*, 22 Mass.App.Ct. 262, 493 N.E.2d 206 (1986), review denied, 398 Mass. 1103, 497 N.E.2d 1096 (1986). Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in injury. *Davis v. Westwood Group*, 420 Mass. 739, 742-743, 652 N.E.2d 567 (1995).

There is no duty to warn of dangers obvious to persons of average intelligence. Lyon v. Morphew, 424 Mass. 828, 833, 678 N.E.2d 1306 (1997); *Toubiana v. Priestly*, 402 Mass. 84, 89, 520 N.E.2d 1307 (1988); *Thorson v. Mandell*, 402 Mass. 744, 749, 525 N.E.2d 375 (1988). See also, *Young v. Atlantic Richfield Co.*, 400 Mass. 837, 842, 512 N.E.2d 272 (1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988) (No duty imposed on gasoline company to warn customers pumping their own gas of danger of being struck by an automobile); *Sweet v. Cieslak*, 23 Mass.App.Ct. 908, 908-909, 499 N.E.2d 1218 (1986)(Owner of car wash was under no duty to warn customer of open and obvious danger of attempting to wash car in near zero temperatures where customer observed wet, icy conditions inside self-service bay before losing his footing); *Polak v. Whitney*, 21 Mass.App.Ct. 349, 353, 487 N.E.2d 213 (1985) (No duty to warn that an automobile could collide with another automobile parked on the street near the defendant's house). Whether a defendant owes a duty of

15

care to a plaintiff is a question of law to be decided by the court. *Davis*, 420 Mass. at 743, 652 N.E.2d 567; *Yakubowicz v. Paramount Pictures*, 404 Mass. 624, 629, 536 N.E.2d 1067 (1989).

"The danger in leaping head first from a five-foot height toward an opening several feet away is an open and obvious danger obviating the duty to warn," *Zackular v. Grant Wilber, Inc* 799 N.E.2d 606, 60 Mass.App.Ct. 1106 (2003) citing *O'Sullivan v. Shaw*, 431 Mass. 201 (2000); *Greenslade v. Mohawk Park, Inc* 798 N.E.2d 336, 59 Mass.App.Ct. 850 (2003) (unpublished) (Visitor to campground injured when he fell from a rope suspended over river near his campsite. Wernick, J., granted summary judgment for owner. Appeals Court held that owner had no duty to warn of open and obvious danger of swinging from rope.); *Tieu v. City of Boston*, 770 N.E.2d 1002, 55 Mass.App.Ct. 1107 (2002) (no duty to warn laborer, who was employed laying marble tiles, of hazardous condition that was open and obvious and observed by laborer on property that association did not own or control, injured when he drove to loading dock located in alley, removed boxes of marble tiles from his van, and slipped and fell on ice.); *Diodato v. U.S.*, 972 F.2d 337 (Table), 1992 WL 180699 (1st Cir.(Mass.) (Unpublished) ("We are bound, however, by the determination of the Supreme Judicial Court that, as a matter of law, the danger of such lines is open and obvious to one aware of their presence," affirming *Diodato v. Grove Mfg. Co.*, Nos. 90-12291-Z, 90-12880-N-Z, 1991 WL 182178 (D.Mass. Aug. 29, 1991) (no basis for negligence liability with respect to "a danger as open and obvious as electrical powerlines"); *Barnett v. City of Lynn* 745

16

N.E.2d 344, 433 Mass. 662 (2001) ( "Insofar as those bases may have been unsuitable for use in an adult's softball game, the plaintiff was in as good a position as the defendant to recognize that danger and to take steps to avoid it by not playing in the game or by arranging to use other types of bases."); *Clarke v. Saxton,* 822 N.E.2d 1213, 63 Mass.App.Ct. 1103 (2005) (unpublished) plaintiff alleged that, in failing to remove the tree stump, the defendants breached their duty to ensure that the premises were safe for use and occupancy by the plaintiff, and in failing to warn pedestrians of the presence of the stump. "The stumps were not on the walkway and their presence was well known to the plaintiff. She chose to walk in the dark without a flashlight, and in the yard rather than on the walkway, knowing that there were stumps, trees, and other obstacles or irregular surfaces in the yard. We think the danger of tripping under such conditions is such as to be open and obvious to a person of average intelligence. The defendant's motion for summary judgment was appropriately allowed."); *Cetrullo v. Howland,* 810 N.E.2d 1289, 61 Mass.App.Ct. 1114 (2004) (plaintiff suffered a severe injury, ultimately resulting in the amputation of his right leg below the knee, when he slipped and fell on goose droppings while performing services for the defendant on the latter's property; summary judgment upheld on the ground that the danger posed by the droppings was open and obvious, thereby absolving the defendant of liability.); *Paroyan v. Powers,* 825 N.E.2d 114, 63 Mass.App.Ct. 1109 (2005) (Plaintiff contended the defendant was negligent in not concerning himself with whether or not there were toys around or on the basketball court. "The plaintiff spent a number of hours sitting on the court, presumably aware that there

17

were children playing there. He was in as good a position as the defendant to notice the block and take precautions. Assuming without deciding that there was a danger in having a party with a crowd of both young and old people, any danger was equally perceptible to the plaintiff.") *Costa v. Boston Red Sox Baseball Club*, 809 N.E.2d 1090, 61 Mass.App.Ct. 299 (2004) (Spectator at professional baseball game brought action against baseball club for negligent failure to warn after she was hit by foul ball and suffered injuries. The Appeals Court, held that the potential for ball to enter stands and injure spectator is obvious danger.) *Kingsley v. Massachusetts Bay Transp. Authy.*, 1 Mass.App.Ct. 838, 839 (1973) (no duty to warn that doors at MBTA exit might open inward); *Feinstein v. Beers*, 801 N.E.2d 300, 60 Mass.App.Ct. 908 (2004) (Condominium resident stabbed in her sleep sued condominium association, and management company for failure to warn her against use of a dowel as a secondary security measure to prevent the sliding glass door leading to her balcony from sliding open further. Upholding entered summary judgment for defendants, the Appeals Court held: "The risk of an intruder entering through a fully open door is obvious. The risk inherent in leaving a door partially open with only an undersized dowel in its track to prevent against further opening is equally obvious.")

Again, Kennedy chose to jump from a top-bunk onto a stool designed to swivel instead of using the lower, stationary bunk as a step. It would be hard to envision a danger more obvious. As such, the defendants owed no duty of care and cannot be found negligent for failing to warn Kennedy not to use the stool as a step or in not providing stairs to the upper bunk.

18

4. **THE DEFENDANTS DID NOT VIOLATE KENNEDY'S STATE CIVIL RIGHTS.**

The Massachusetts Civil Rights Act provides a State remedy for interference or attempts to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or rights secured by the Constitution or laws of the Commonwealth by threats, intimidation, or coercion. *See* G.L. c. 12, § 11H. Section 11I authorizes a private cause of action for the deprivation of secured rights and an award of attorneys' fees for the prevailing party. *See* G.L. c. 12, § 11I. Kennedy's Verified Complaint fails to allege any interference with his rights by "threats, intimidation or coercion," a necessary predicate for recovery under the Massachusetts Civil Rights Act. *See Owens v. Dept. of Educ.*, 57 Mass. App. Ct. 1116 (2003) (attached). As such, the defendants are entitled to summary judgment on Kennedy's claim that they violated G.L. c. 12, § 11I.

5. **THE DEFENDANTS DID NOT VIOLATE KENNEDY'S FEDERAL CIVIL RIGHTS.**

Counts I is pleaded under 42 U.S.C. §§ 1981, 1983, 1985(c),[1] 1986, and 1988, and alleges that the defendants violated Kennedy's federal civil rights by their intentional, wilful, knowing, malicious and purposeful violations. Kennedy's claim that the defendants violated his civil rights guaranteed by federal law and the United States Constitution is without merit, as the defendants provided him with appropriate care at all times during his incarceration at HCCC.

---

[1] The defendants note that there is no § 1985(c), and assume that Kennedy intended to assert a claim under 42 U.S.C. § 1985(3).

19

### A. KENNEDY HAS FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1981.

Section 1981 guarantees equal rights under the law. *See* 42 U.S.C. § 1981. Kennedy does not claim, nor does even the most generous reading of his Verified Complaint suggest, that he is a member of a suspect class that is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562 (1976) (internal quotation marks omitted). Suspect classes for equal protection purposes include classifications based on race, alienage, or national origin, and certain quasi suspect classes, based on gender and illegitimacy. *See Int'l Paper Co. v. Town of Jay*, 928 F.2d 480, 485 n.2 (1st Cir. 1991). "From a constitutional standpoint, prisoners simply are not a suspect class." *Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000). "Although . . . seriously disadvantaged when . . . compared to individuals at liberty and although they are the subject of political hostility, [inmates] do not constitute a suspect class because their status is the result of precise, individualized application of otherwise neutral laws." *Graham v. Bowen*, 648 F.Supp. 298, 301 (S.D.Tex.1986); *see also Lee v. Governor of N.Y.*, 87 F.3d 55, 60 (2d Cir.1996); *Hastings v. Comm'r of Corr.*, 424 Mass. 46, 53, 674 N.E.2d 221 (1997) (prisoners are not an inherently suspect class for equal protection purposes). Moreover, it is well established that prison officials and medical officers have wide discretion in treating prisoners, and a simple claim of malprac-

tice or negligence does not give rise to a claim under § 1981. *See DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991).

As Kennedy does not allege that he was denied proper medical care because of his race or some other suspect classification, he has failed to state a cause of action under § 1981.

### B. KENNEDY'S 42 U.S.C. §§ 1983 AND 1988 CLAIMS MUST BE DISMISSED, AS THERE IS NO EVIDENCE THAT THE DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE.

The Eighth Amendment's prohibition against cruel and unusual punishment includes an inmate's right to adequate medical care. *See Farmer v. Brennan*, 511 U.S. 825, 830 (1994). Not every injury suffered by an inmate, however, gives rise to a claim under § 1983. In order for an inmate to establish that his right to adequate medical care has been violated, the inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *DesRosiers*, 949 F.2d at 18. Deliberate indifference is manifested by conduct that offends evolving standards of decency. *See Estelle*, 429 U.S. at 106; *DesRosiers*, 949 F.2d at 18. Additionally, deliberate indifference is not inadvertent or negligent; "the complaint must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain." *DesRosiers*, 949 F.2d at 19. "While this mental state can aptly be described as 'recklessness,' it is not recklessness in the tort-law sense, but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily

21

preventable." *Id.* at 19.

In the context of this action, deliberate indifference means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 834. A prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Even if prison officials know of a substantial risk to inmate health or safety but fail to prevent the harm, they "may be found free from liability if they respond reasonably to the risk." *Giroux v. Somerset County*, 178 F.3d 28, 32 (1st Cir. 1999). In the case of incarcerated prisoners with serious medical needs, failures to act, such as to provide medical care, may comprise a constitutional violation under §1983 only if the plaintiff shows that the inaction was malicious or reflected the official's deliberate indifference to the welfare of the prisoner or inmate. *See* U.S. CONST., amend. XIV; 42 U.S.C. §1983; *Hasenfus v. LaJeunesse*, 175 F.3d 68, 71 (1st Cir. 1999). Moreover, the First Circuit has observed that, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Layne v. Vinzant*, 657 F.2d 468, 474 (1st Cir. 1981) (internal quotation marks omitted).

Here, none of the defendants' actions were deliberately indifferent as a matter of law. Immediately upon learning that Kennedy had injured himself when he fell while exiting his bunk, Officer Marcelina called the Health Services Department, and an officer transported Kennedy to the Health Services Department via wheelchair. Upon arriving at the Health Services Department, Kennedy was examined by a nurse and sent for x-rays of his hip. Thereafter, he was instructed that minimum ambulation was advised to promote healing and prevent further injury pending the radiology report. Whether or not to issue crutches to Kennedy while the radiologist's report was pending was a medical decision within the discretion of the defendant health care providers, and there is absolutely no evidence that the defendants knew of and disregarded an excessive risk to Kennedy's health or safety. *See Farmer*, 511, U.S. at 837. When the first set of x-rays of Kennedy's left hip proved inconclusive, the defendants immediately ordered a second set of x-rays. Even though the second set of x-rays did not definitely show a fracture of Kennedy's left hip, the defendants sent him to the emergency room at Baystate Medical Center for further examination. Throughout Kennedy's stay at Baystate, the defendants were in contact with his attending nurses and sought information about plans for post-operative physical therapy so that the proper arrangements could be made prior to Kennedy's return to HCCC. When Kennedy returned to HCCC, he was seen on a regular basis by the Health Services Department staff for post-operative care until he was transferred to the Hampshire County Jail and House of Correction.

Even if prison officials know of a substantial risk to inmate health or safety but fail

23

to prevent the harm, they "may be found free from liability if they respond reasonably to the risk." Giroux V. Somerset County 178 F.3d 28, 32 (1st Cir. 1999). In the case of incarcerated prisoners with serious medical needs, failures to act, such as to provide medical care may comprise a constitutional violation under §§ 1983 only if the plaintiff shows that the inaction was malicious or reflected the official's deliberate indifference to the welfare of the prisoner or inmate. U.S.C.A. Const.Amend. 14; §§42 U.S.C.A. 1983. Hasenfus v. LaJeunesse 175 F.3d 68 (1st Cir. 1996); James v. Welch, 96 F.3d 1430 (1st Cir. 1996)1996 WL 536612 ("It is clear from plaintiff's appellate brief that he is no longer challenging the decision to save his teeth rather than to extract them, and plaintiff has instead redirected his focus on an allegedly unconstitutional delay in furnishing treatment. His complaint, however, failed to allege that the named defendants were responsible for the delay. In short, plaintiff failed adequately to allege deliberate indifference on the part of the named defendants.") Figueroa v. Vose, 874 F.Supp. 500, 505-874 (D. R.I. 1994) ("I find that Figueroa's eye condition (pterygium), surgery and post-operative care created a serious medical need. I also find, however, that these defendants did not act with deliberate indifference thereto.")

As there is no merit to Kennedy's contention that the medical care he received was anything less than adequate and appropriate under the circumstances, his claim for attorney's fees under 42 U.S.C. § 1988 also must fail. Section 1988 provides that in civil rights actions brought under § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Thus, if the

24

Court grants summary judgment in favor of the defendants on Kennedy's § 1983 claim, then it also must grant summary judgment on his § 1988 claim for attorney's fees.

### C.  KENNEDY HAS FAILED TO STATE CLAIMS UNDER 42 U.S.C. §§ 1985 AND 1986.

Section 1985 provides a cause of action against two or more persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws." 42 U.S.C. § 1985. A claim under § 1985 requires both the deprivation of a right secured by the Constitution or by Federal law and "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Hahn v. Sargent*, 523 F.2d 461, 468 (1975). The First Circuit has "interpreted this requirement to mean that the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." *Id.* at 469 (internal quotation marks omitted). Here, Kennedy fails to state a cause of action under § 1985, because he does not allege that the defendants conspired to violated his constitutional rights based upon any class-based animus. *See id.* Indeed, Kennedy fails to allege any conspiracy at all on the part of the defendants. Accordingly, his claim under § 1985 fails.

Kennedy's § 1986 claim is equally without merit. Section 1986 provides that those "having power to prevent or aid in preventing the commission of the [violations committed under § 1985] . . . shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented." 42

25

U.S.C. § 1986. It is clear from the language of the statute that a right of action under § 1986 is dependent upon a successful § 1985 action, which Kennedy clearly cannot support here. *See id.*

Accordingly, the defendants are entitled to summary judgment on Kennedy's §§ 1985 and 1986 claims.

## CONCLUSION

The defendants' Motion for Summary Judgment must be granted because they did not violate Kennedy's civil rights and based upon the his failure to comply with the mandatory statutory notice requirements of Massachusetts General Law chapter 258.

For the Defendants by their Attorneys

Edward J. McDonough, Jr., BBO# 331590
Katherine A. Day, BBO# 657765
EGAN, FLANAGAN AND COHEN, P.C.
67 Market Street - Post Office Box 9035
Springfield, MA 01102
(413) 737-0260; Fax: (413) 737-0121

Certificate of Service

_____ certifies that copies of the foregoing document was served on all parties by fax/mail on  7 /29 /2005.

2866-010803\74944.wpd

26