## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action Number: 04-30006-KPN

| | |
|---|---|
| THOMAS KENNEDY, | ) |
| Plaintiff | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF MASSACHUSETTS | ) |
| COUNTY OF HAMPDEN, HAMPDEN COUNTY | ) |
| CORRECTIONAL CENTER, MICHAEL | ) |
| ASHE, JR., SHERIFF OF HAMPDEN COUNTY, | ) |
| THOMAS CONKLIN, SUPERINTENDENT OF | ) |
| HEALTH SERVICES OF HAMPDEN COUNTY | ) |
| CORRECTIONAL CENTER, AND CERTAIN | ) |
| JOHN DOES, | ) |
| Defendants | ) |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND
## REQUEST FOR ORAL ARGUMENT

NOW COMES the Plaintiff Thomas Kennedy and, pursuant to Rule 56 of the Federal

Rules of Civil procedure, submits this memorandum of law in opposition to the Defendants

Commonwealth of Massachusetts, Hampden County Correctional Center's Motion for Summary

Judgment. This opposition consists of the plaintiffs' statement of material fact supported by

discovery and legal argument.

## INTRODUCTION

The Plaintiff Thomas Kennedy (hereinafter "Plaintiff") claims to have been subjected to

unlawful treatment while an inmate at the Defendants, Commonwealth of Massachusetts

Hampden County Correctional Center et al. (hereinafter "Defendants"). Specifically, Plaintiff

alleges that, because of the Defendants' actions or inactions, the Plaintiff suffered a fractured hip on January 12, 2001, was denied appropriate medical care until January 18, 2001, and was subjected to orders from an unbelieving and indifferent staff that included being forced to walk, without the aid of crutches, with a fractured hip or suffer isolation punishment. The Plaintiff has brought federal claims pursuant to 42 U.S.C., Sections 1981, 1983, 1985(c), 1986 and 1988 as well as pendent claims for violations of state civil rights, intentional and negligent infliction of emotional distress, and negligence. Further the Plaintiff has averred (inter alia) that the Defendant's actions or inactions rose to the level of cruel and unusual punishment.

## STATEMENT OF DISPUTED FACT

Pursuant to Local Rule 5.1, Plaintiff attaches and herein incorporates to this Opposition to Defendants' Motion for Summary Judgement a Statement of Disputed Facts supported by the record evidence.

## ARGUMENT

## SUMMARY JUDGMENT STANDARD

Summary Judgment will be granted if "there are no genuine issues of material fact" and "the moving party is entitled to judgement as a matter of law" Fed. R. Civ. P. 56(c). *See:* Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997). At this point in the proceedings, the court must resolve any conflicts in the summary judgment materials, and make all logically permissible inferences, in plaintiff's favor" Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991); *See also* LeBlanc v. Great American Insurance Co., 6 F.3d 836 (1st Cir., 1993)("we, like the District Court, are obliged to review the record in the light most favorable to the non-moving party, and to draw all reasonable inferences in the non-moving party's favor").

The Defendants' Motion for Summary Judgment should be denied because genuine issues of material fact exist requiring the case to be presented to a jury.

## THE DEFENDANT'S MOTION TO DISMISS COUNT I SHOULD BE DENIED INASMUCH AS THE COUNT ALLEGES VIOLATIONS OF §§ 1983 AND 1988

1. **An Inmate Is Entitled To Protection From Physical Injury And To Proper Treatment For Injuries Sustained While In the Custody Of The Commonwealth.**

The Supreme Court has recognized that deliberate indifference on the part of prison staff to the serious medical needs of an inmate can constitute cruel and unusual punishment under the eighth amendment.  Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  A plaintiff must satisfy two elements to present a viable claim: he must show a serious medical need, and he must prove the defendant's purposeful indifference thereto. Sires v. Berman et al., 834 F.2d 9, 12 (1987).

**Serious Medical Need**

In this case the Plaintiff has shown that he had a serious medical need.  It is undisputed that the Plaintiff suffered a fractured hip while incarcerated at the Defendants' facility. SEE: (TAB 7:  Hampden County House of Correction Medical Records) and (TAB 8: Baystate Medical Center Discharge Notice).   Plaintiff asserts that a fractured hip constitutes a serious medical need which required medical treatment and attention.

**Deliberate Indifference and Summary Judgment**

Because the element of "deliberate indifference" by definition requires a subjective inquiry, courts are cautious in granting summary judgment. Dias v. Vose, 865 F.Supp. 53, 57 (1994).  The difference between situations presenting issues of triable fact and those warranting

summary judgment is often a matter of degree. Id. In Rogers v. Evans, 792 F.2d 1052 (11th Cir.

1986), "[t]he Court found that the 'evidence could permit an inference . . . that [decedent]

suffered pain and extreme distress' as a result of the doctor's 'gross incompetence." Id. at 58.

The Court acknowledged that while mere negligence or medical malpractice has no

constitutional dimension, "medical care so inappropriate as to evidence intentional maltreatment

or a refusal to provide essential care violates the eighth amendment." Id. In this case the

Defendants failure to diagnose and treat an obvious injury such as the Plaintiff's fractured hip for

six (6) days should permit this Court an inference that the Plaintiff suffered pain and extreme

distress and the Plaintiff suffered as a result of the Defendants inaction.

In order to establish that medical mistreatment constitutes a violation of the Eighth

Amendment, a prisoner must show "acts or omissions sufficiently harmful to evidence deliberate

indifference to serious medical need." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985)

(quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976))." Dias

v. Vose, 865 F.Supp. 53, at 56. "A medical need is 'serious' if it is one that has been diagnosed

by a physician as mandating treatment, or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention." Id. The later is applicable in this

instance.

The fractured hip was an injury that should have been obvious even to lay persons such as

the corrections officers, however, in this instance the Plaintiff was attended to by a nurse who

should have recognized such an injury. The nurse did not. SEE: (TAB 4: Deposition Transcript

of Plaintiff page 34, lines 12-23). The Plaintiff's continued assertions of pain were not believed

and the Plaintiff repeated requests for treatment were not timely answered. SEE: (TAB 4:

Deposition Transcript of Plaintiff page 40-41, lines 22-10). The nurse either failed to interpret or was unable to interpret the X-rays that were taken of the Plaintiff's hip. The plaintiff was denied crutches or assistance and was because of the injury was forced in part to crawl to his cell from the medical ward. SEE: (TAB 4: Deposition Transcript of Plaintiff page 36, lines 16-18 and page 40, lines 5-6) The Defendants' inattention to the plaintiff's injuries continued for six (6) days when the plaintiff asserts a correctional officer, "called down [to medical] and said '[t]his guy is crawling around the pod.' ... 'I can't have this guy crawling around my pod.'" SEE: (TAB 4: Plaintiff's Deposition Transcript page. 41, lines 17-21). On January 18, 2001 an attending physician at Bay State Medical Center immediately diagnosed a fractured hip from the x-rays that were provided to him by the corrections facility, stating "I can't believe that they missed this." SEE: (TAB 4: Deposition Transcript of Plaintiff page 82-83, lines 10-8). The plaintiff's injuries necessitated surgery and an in-patient hospital stay from through January 26, 2001. SEE: (TAB 8: Baystate Medical Discharge Summary).

### The Plaintiff Was Threatened With Punishment For Requesting Treatment

On the date that the plaintiff was injured he requested that he be provided with crutches or a cane to assist him in returning to his cell. This request was denied. The plaintiff protested,

"[b]ecause I was in very much pain and I was telling them [Defendants' medical staff] how much pain I was in. And I was -- and they told me if I don't go back -- I told them I need crutches to get back. They told me if I didn't get back, they would have a C.O. come and get me and take me down to the hole." SEE: (TAB 4: Plaintiff's Deposition Transcript page. 35, lines 16-21).

The defendant's failure to provide the plaintiff with crutches resulted in the plaintiff, "crawling

up the stairs, getting up, walking into the pod, and then crawling back into the cell." SEE: (TAB 4: Plaintiff's Deposition Transcript page. 37, lines 15-17).

Over the course of the next two to three days the plaintiff, suffering from a fractured hip, was forced to walk down the stairs to the chow hall to eat, "with the threat of going to the hole if [he] didn't do it." SEE (TAB 4: Plaintiff's Deposition Transcript page. 39-40, lines 22-6).

Accordingly, genuine issues of material fact exists as to whether this was an obvious injury requiring medical treatment, whether the actions the defendants amounted to deliberate indifference and whether the correctional staff engaged in threatening behavior intended to violate the plaintiff right to seek medical attention. Because of these issues the defendants' motion for summary judgment should be denied.

## THE DEFENDANTS' MOTION TO DISMISS COUNT II
## THE PLAINTIFF'S STATE CIVIL RIGHTS CLAIM SHOULD BE DENIED

The Massachusetts Civil Rights Act (G.L. c. 12 §11I) provides in pertinent part:

Any person whose exercise or enjoyment of rights secured by he constitution or
laws of the United States, or of rights secured by the constitution or laws of the
commonwealth, has been interfered with, or attempted to be interfered with, [by
any person by means of threats, intimidation or coercion], may [bring an action]...

In order to prevail on a claim under the Massachusetts Civil Rights Act, the plaintiff must prove three elements. The plaintiff must establish that (1) his exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, by the defendant(s), and (3) the interference or attempted interfere was by threats, intimidation, or coercion. Swanset Development Corporation v. City of Taunton, 423 Mass. 390, 395, 668 N.E. 2d 333, 337 (1996); Sarvis v. Boston Safe Deposit and Trust Co., 47 Mass.App.Ct. 86, 91, 711 N.E. 911, 917 (1999);

LaManque v. Massachusetts Department of Employment and Training, 3 F.Supp.2d 83, 93 (D.Mass. 1998); French v. United Parcel Service, Inc., 2 F.Supp.2d 128, 133 (D.Mass. 1998).

The defendants aver in its Motion for Summary Judgement that the plaintiff has failed to allege any threats, intimidation or coercion in his verified complaint, and thus is entitled to summary judgement. The defendant have not asserted that the plaintiff has failed to allege interference or attempted interference with a secured right. The plaintiff had a secured right to expect and to request adequate medical treatment while in the custody of the defendants. Prisoners have a right, subject to reasonable limitations of time and place, to petition prison authorities for the redress of their grievances. That right is a secured right under the Massachusetts Civil Rights Act. Langton v. Secretary of Public Safety, 37 Mass.App.Ct. 15, 19, 636 N.E.2d 299, 302 (1994).

The plaintiff has asserted in his verified complaint that his request for an lower bunk was denied SEE: (TAB 1: Verified Complaint ¶¶ 11, 12); that his request for crutches was denied SEE: (TAB 1: Verified Complaint ¶¶ 20, 21) and that he complained of pain every day from the date of the injury until eventually being taken to the hospital six (6) days later. SEE: (TAB 1: Verified Compliant ¶23). In response to the defendants' interrogatories the plaintiff more fully provides that after suffering injuries while dismounting from his bunk bed, "[he] requested crutches which were denied. When [he] protested, [he] was told to either go back to [his] cell or [he] would be taken to the 'hole'" SEE: (TAB 3: Plaintiff's Answers to Interrogatory Number 8 signed under oath) and (TAB 4: Plaintiff's Deposition Transcript page 35, lines 16-21, page 36, lines 14-18, and page 40, lines 5-6). The plaintiff also provides that "Corrections officials forced [him] to walk up and down stairs under threat of isolation punishment for refusal to

comply with orders" and "[he] was threatened with punishment and punished for asserting [his]

rights to adequate medical care." SEE: (TAB 3: Plaintiff's Answers to Interrogatory Number 9

and Number 17 signed under oath) and (TAB 4: Plaintiff's Deposition Transcript page 35, lines

16-21, page 36, lines 14-18, and page 40, lines 5-6).

The plaintiff suffered a significant injury requiring medical treatment. This injury went

undiagnosed and basically untreated for six (6) days. When the plaintiff complained about the

lack of medical attention and the inadequate accommodations that he was receiving he was

subjected to threats that he "would be taken to the hole," and be subjected to "isolation

punishment." Accordingly, the record evidence presents sufficient evidence to establish a

violation of the Massachusetts Civil Rights Act and the Defendants' motion for summary

judgement should be denied.

## THE DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S COMMON LAW TORT CLAIMS (COUNTS III, IV, AND V) SHOULD BE DENIED

The defendants' assert that the plaintiff's allegations of negligence, intentional infliction

of emotional distress and negligent infliction of emotional distress must be dismissed because:

(A) the plaintiff has failed to meet the Massachusetts Tort Act presentment requirements, and (B)

the doctrine of "open and obvious danger" precludes recovery.

### A.    The Plaintiff's Presentment To Secretary of State Was Sufficient Under The Massachusetts Tort Claims Act.

Defendant ties too tight a rope around its assertion that in this case proper presentment

under the Massachusetts Tort Claims Act must be made to the Attorney General of the

Commonwealth.    Pursuant to the Massachusetts Tort Claims Act:

"A civil action shall not be instituted against a public employer on

a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the **executive officer of such public employer** within two years after the date upon which the cause of action arose . . ." [G.L. c. 258 § 4] (emphasis added).

The term "executive officer of such public employer" is defined in G.L. c. 258 § 1 as follows:

"Executive officer of a public employer," the secretary of an executive office of the commonwealth, or in the case of an agency not within the executive office, the attorney general . . ."

The executive officer of the Commonwealth is charged with the enforcement of the laws of the Commonwealth and as such the punishment of offenders. Corrections facilities fall within the executive offices of the Commonwealth. (Massachusetts General Laws Chapter 126 §1 et al.; "Pursuant to the provisions of G.L. c. 126, the Commonwealth provides for county jails and houses of corrections..." Gordon v. Sheriff of Suffolk County, 411 Mass. 238, 241, 580 N.E.2d 1039, 1041 (1991); "The Commissioner of Correction is responsible, in part, for the administration and operation of correctional facilities of the Department of Correction and has statutory obligations with respect to county jails and correctional facilities, *citing* G.L. c. 124 §§1, 6, and G.L. c. 127 §§ 1A, 1B.)   Accordingly, the presentment made to an executive office of the Commonwealth and made on behalf of the Plaintiff to the Secretary of State on September 25, 2001 was sufficient under the statute.

**B.    The Plaintiff Concedes That The Defendants Ashe And Conklin Are Immune From Liability For Tort Claims Under G.L. Chapter 258.**

As public employees the Defendants, Ashe and Conklin, are entitled to immunity from liability under M.G.L. c. 258 for actions taken within the scope of their employment. The plaintiff concedes that the defendant's were acting in the scope of their employment and thus are

immune from liability under the Tort Claims Act.

## C.    The Doctrine of "Open and Obvious" Danger Is Not Applicable

In his verified complaint, the plaintiff has alleged several acts or omissions which he asserts to evidence negligence on the part of the defendants.

### Assignment to top bunk

Upon intake, the plaintiff informed defendants' medical staff that he suffered from sciatica problems and he requested a lower bunk. SEE: (TAB 1: Verified Complaint at ¶ 11) and (TAB 3: Plaintiff Interrogatory answer #9) and (TAB 4: Plaintiff's deposition transcript pages 27-28, lines 17-10). The bunks in the defendants' cells are mounted directly to the wall. The bunks do not have ladders. SEE: (TAB 6: Photographs of cell). The plaintiff was aware of this from a prior incarceration SEE: (TAB 5: Plaintiff's CORI report) and specifically requested that he be provided with a lower bunk. SEE (TAB 4: Plaintiff's deposition transcript pages 27-28, lines 17-10). The plaintiff's request was denied. Specifically, the defendants' representative indicated to the plaintiff, "couldn't have a top [sic] bunk [and] [h]e's heard that story before." SEE: (TAB 4: Plaintiff's deposition transcript pages 28-29, lines 18-1)

The failure to provide the plaintiff with a lower bunk after having been informed of the plaintiff's affliction was negligent and was a proximate cause of the plaintiff's injuries. The failure to provide the plaintiff with a lower bunk caused the plaintiff emotional distress in addition to the physical injuries suffered. The failure to provide the defendant with a lower bunk should preclude the entry of summary judgement as to Counts THREE, FOUR and FIVE.

### Failure to Provide Adequate Means of Access and Egress From Top Bunk

As stated above, the bunks in the defendants' cells are mounted directly to the wall. The

bunks do not have ladders. Accessing and exiting from the top bunk requires an inmate to climb down using whatever is available or to jump down. The defendant asserts that climbing down from the top bunk in the manner utilized by the plaintiff created an "open and obvious danger" which precludes him from recovery. The defendants' position is flawed.

First, the manner that the plaintiff dismounted from the bed was not an open and obvious danger. Because there was no ladder present, an inmate exiting the top bunk would either have to climb down onto the lower bunk, or climb down onto some other object or jump from the top bunk to the floor. Each manner of egress has its own potential for danger and neither appears to be more open and obviously dangerous than the other. At his deposition the plaintiff testified that he did not think that it would be appropriate to exit using the lower bunk for fear of stepping on his cell-mate. ("You just can't step on another person.") SEE: (TAB 4: Plaintiff's deposition transcript page 73 line 3). The plaintiff's testimony seemed to indicate that there were no other objects in the cell to utilize in exiting the bed. SEE: (TAB 4: "You never have a chair in a room. They're not allowed in rooms.") and (TAB 4: Plaintiff's deposition transcript page 75 lines 9-12) The plaintiff testified that the height of the top bunk was to the top of his shoulders and that he stands approximately six (6) feet tall. SEE: (TAB 4: Plaintiff's deposition transcript page 72 lines 17-22). Thus making a dismount by jumping straight to the floor an unattractive alternative. When confronted with these choices, the manner elected by plaintiff to get out of bed is not an open and obvious danger.

Second, the plaintiff testifies that the "only way to get down" was the manner that he utilized SEE: (TAB 4: Plaintiff's deposition transcript pages 71-72 lines 20-7) and that he observed other inmates dismounting from their top bunks in the same fashion, "when you watch

other people and you do what they do, however they do it, that's how you do it ... [t]hat's the way its done" SEE: (TAB 4: Plaintiff's deposition transcript page 77 lines 12-17). If the plaintiff saw other inmates exiting the top bunks in this manner so as to draw the conclusion that this was the only way to do so, the "open and obvious dangerous doctrine" can not apply. The open and obvious danger exception to a defendant's duty to warn entails a "fact-specific" inquiry most often reserved for a jury. See: Liriano v. Hobart Corp., 92 N.Y.2d 232, 241-242, 677 N.Y.S.2d 764, 700 N.E.2d 303 (1988). The question is whether a person of ordinary intelligence would understand the actions they engage in will likely lead to the injuries suffered. O'Sullivan v. Shaw, 431 Mass. 201, 204; 726 N.E.2d 951, 955 (2000). Here, because the plaintiff saw other inmates dismounting from their bunks in this fashion, it was not obvious to him of the dangers associated with this action.

Third, the "open and obvious danger" rule is not available to the Hampden County House of Corrections. There is an exception to the obvious danger rule where, because of convenience or necessity, the invitee might reasonably be expected to use the premises even with knowledge of the danger. New York C. R. Co. v. Moynihan, 338 F2d 644 (1964, Ca 1 Mass.) cert den 381 U.S. 905, 14 L.Ed. 2d 285, 85 S.Ct. 1448. In this instance the Plaintiff observed other inmates dismounting from their top bunks by utilizing the cell's desk stool. The Plaintiff knew of no other viable alternative other than to use the cell's desk stool to descend from his top bunk.

Finally, the liability of an owner or possessor of property may be based on the fact that the premises possessed a defect which the defendant ought to have discovered in the exercise of reasonable care. Paquette v. Bradley, 348 Mass. 326, 203 N.E.2d 555 (1965). In cases involving dangerous conditions not caused by active negligence, there must be evidence that a defendant

had actual knowledge of the condition or that it had lasted for a long enough period for the defendant to know that a dangerous condition existed. <u>Briggs v. Taylor</u>, 397 Mass. 1010, 494 N.E.2d 1023 (1986). Here, the Corrections Center knew or should have known that inmates were descending from their top bunks in the same fashion as the plaintiff and allowed it to continue.

The issue is then whether the evidence warrants a finding that there was a defect on the premises and that the defect existed for such a period of time that a defendant in the exercise of reasonable care should have known of it, had an opportunity to remedy it, and failed to do so. <u>Charter v. Supreme Council of Royal Arcanum</u>, 356 Mass 715, 247 N.E.2d 863 (1969). These are the circumstances in this case. The "open and obvious danger" doctrine is not applicable in this case and the Court should deny the Defendants' motion for summary judgement on Counts III, IV and V because the Defendant's failure to provide adequate egress from the top bunk was a proximate cause of the plaintiff's injuries, pain and suffering and the motion for summary judgment should be denied.

## Failure to Diagnose Plaintiff's Injury In a Timely Fashion

The plaintiff was injured on January 12, 2001 and was not taken to the hospital until January 18, 2001. SEE: (TAB 7: Hampden County House of Correction Medical Records) and (TAB 8: Baystate Hospital Discharge Summary) During the six (6) days before being treated in the hospital, the plaintiff was denied the use of crutches; the plaintiff was required to walk up and down stairs on a broken hip; the plaintiff was denied proper pain medication; and the plaintiff was threatened with isolation punishment when he complained. The failure of the defendant to diagnose the plaintiff's injury and to provide timely treatment caused the plaintiff unnecessary pain and suffering. This pain and suffering was accompanied by the physical injury of a fractured

hip. Thus, the Court should deny the defendant's motion for summary judgement on counts III, IV and V.

## CONCLUSION

For the reasons stated above, Summary Judgement should be denied.

Respectfully Submitted
THOMAS KENNEDY
By his attorney,

Alfred P. Chamberland
BBO#: 564151
9 Campus Lane -- PO Box 217
Easthampton, MA 01027-0217
(413) 529 - 0404

August 15, 2005

## CERTIFICATE OF SERVICE

I, Alfred P. Chamberland, hereby certify that the above document was provided to the Defendant's Counsel of Record via First Class US Mail, post pre-paid on August 15, 2005.

Edward J. McDonough, Jr., Esquire
Egan, Flanagan and Cohen, P.C.
67 Market Street - PO Box 9035
Springfield, MA 01102-9035

Alfred P. Chamberland

STATEMENT
OF FACTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action Number: 04-30006-KPN

| | |
|---|---|
| THOMAS KENNEDY,<br>          Plaintiff<br>v.<br><br>COMMONWEALTH OF MASSACHUSETTS<br>COUNTY OF HAMPDEN, HAMPDEN COUNTY<br>CORRECTIONAL CENTER, MICHAEL<br>ASHE, JR., SHERIFF OF HAMPDEN COUNTY,<br>THOMAS CONKLIN, SUPERINTENDENT OF<br>HEALTH SERVICES OF HAMPDEN COUNTY<br>CORRECTIONAL CENTER, AND CERTAIN<br>JOHN DOES,<br>          Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## STATEMENT OF DISPUTED FACT

Pursuant to Local Rule 5.1, Plaintiff attaches and herein incorporates to his Opposition to Defendants' Motion for Summary Judgement a Statement of Disputed Facts supported by the record evidence.

1.    The plaintiff, Mr. Thomas Kennedy (hereinafter "plaintiff") was incarcerated at the Hampden County Correctional Center on or about January 11, 2001. (SEE TAB 1: Verified Complaint, ¶ 11);

2.    The Hampden County House of Correction is administered and operated under the executive branch of government with partial supervision being entrusted to the Commissioner of Corrections. (SEE TAB 2: G.L. c. 124 §§1, 6, and G.L. c. 127 §§ 1A, 1B.);

3.    At the orientation in-take, plaintiff requested a bottom bunk due to an inherent weakness in his legs and a condition known a sciatica.. (SEE TAB 1: Verified Complaint, ¶ 11; (SEE TAB 3: Interrogatory # 9); and (SEE TAB 4: Deposition Transcript-Plaintiff, pages 27-28, lines 17-

10);

4.    Plaintiff's requests for a lower bunk assignment were denied. (SEE TAB 1: Verified Complaint, ¶ 12) and (SEE TAB 4: Deposition Transcript of Plaintiff, pages 28-29, lines 18-1). The medical person hearing the plaintiff's requests was unbelieving and unsympathetic and indicated that "he had heard that story before." (SEE TAB 4: Deposition Transcript of Plaintiff, pages 28-29, lines 18-1).  The plaintiff was assigned a top bunk;

5.    The plaintiff had served previous period(s) of incarceration at the Hampden County House of Corrections. (SEE TAB 5: CORI Report) and (SEE TAB 4: Deposition Transcript of Plaintiff, page 17, lines 11-24 and page 18, lines 1-15);

6.    The bunk beds in the Plaintiff's cell were attached directly to the wall. There was no ladder or steps to dismount from the top bunk. (SEE TAB 6: Photographs of Cell). There was no movable furniture in the cell to assist plaintiff in dismounting from the top bunk.  (SEE TAB 4: Deposition Transcript of Plaintiff, page 75, lines 5-24, page 76, lines 1-19);

7.    During his prior incarceration, plaintiff has observed other inmates dismount from the top bunk by stepping onto the stool attached to the desk. The plaintiff perceived of this to be the only way of dismounting from the top bunk.  (SEE TAB 4: Deposition Transcript of Plaintiff, pages 171-172, lines 20-7 & page 77, lines 12-17);

8.    On January 12, 2001, while utilizing due care in dismounting from the top bunk,  plaintiff fell and was injured. (SEE TAB 1: Verified Complaint, ¶ 13) and, (SEE TAB 7: Hampden County Correctional Center Medical Record) and (TAB 8: Baystate Medical Center Discharge Summary);

9.    Plaintiff was taken to the infirmary and was x-rayed at the jail by defendants' staff.  (SEE TAB 7: Hampden County Correctional Center Medical Record);

10.    Plaintiff was informed that the x-rays were negative. (SEE TAB 4: Deposition Transcript of Plaintiff, page 34, lines 16-19). The plaintiff was denied the use of crutches. (SEE TAB 4: Deposition Transcript of Plaintiff, page 32, lines 18-24), and (SEE TAB 9: Hampden County Corrections Incident Report Form). The plaintiff was denied appropriate pain killing medication. (SEE TAB 4: Deposition Transcript of Plaintiff, page 36, lines 4-8, page 41, lines 3 - 7, and page 84, lines 5 - 10);

11.    When plaintiff complained that he did not believe that he was being provided with adequate attention and treatment, the defendants threatened that if he continued to complain he would be thrown in the hole (isolation punishment). (SEE TAB 4: Deposition Transcript of Plaintiff, page 35, lines 16-21; page 36, lines 14 - 18; and page 40, lines 5-6);

12.    The plaintiff was forced to return to his cell without crutches or a cane or any assistance. (SEE TAB 4: Deposition Transcript of Plaintiff, page 36, lines 16-18; and page 40, lines 5-6); The plaintiff was in such pain he crawled at least part of the way to his cell. (SEE TAB 4: Deposition Transcript of Plaintiff, page 37, lines 10 -24 and page 38, lines 1 - 19);

13.    The plaintiff continued to complain about the physical pain he was experiencing from January 12, 2001 through January 17, 2001. (SEE TAB 1: Verified Complaint, ¶ 23 and SEE TAB 4: Deposition Transcript of Plaintiff, page 40- 41, lines 22 - 21). During these six (6) days, the plaintiff was threatened that if he did not walk up and down the stairs (without the aid of crutches) to chow hall he would be punished be being placed in "the hole" or he would be denied the right to eat. (SEE TAB 4: Deposition Transcript of Plaintiff, page 35, lines 16-21; page 36, lines 14 - 18; page 40, lines 5-6); and (SEE TAB 3: Plaintiff's Interrogatory # 8 and # 17);

14.    From January 12, 2001 through January 17, 2001, the plaintiff was seen crawling around the pod and was eventually sent back to the medical unit. (SEE TAB 4: Deposition Transcript of

Plaintiff, page 41, lines 17-21 and page 45, lines 5 - 13);

15.    Between January 12, 2001 and January 17, 2001, the plaintiff had a great deal of difficulty ambulating in the jail and was physically unable to attend two medical "sick calls." (SEE TAB 7: Hampden County Correctional Center Medical Record), and (SEE TAB 4: Deposition Transcript of Plaintiff, page 41, lines 17-21 and page 45, lines 5 - 13);

16.    On January 17, 2001, the plaintiff was x-rayed a second time by the defendants' staff. (SEE TAB 7: Hampden County Correctional Center Medical Record);

17.    On January 18, 2001, the plaintiff was transported to BayState Medical Center together with x-rays taken by at the House of Correction. (SEE TAB 7: Hampden County Correctional Center Medical Record) and  (TAB 8: Baystate Medical Center Discharge Summary) Almost immediately upon arriving an attending physician observed the x-rays and informed the Defendant that he had a broken hip (SEE TAB 4: Deposition Transcript of Plaintiff, page 82-83 , lines 24 - 7);

18.    The plaintiff underwent surgery and was admitted to BayState Hospital.  The Defendant remained in Baystate Hospital until on or about January 26, 2001 (TAB 8: Baystate Medical Center Discharge Summary).

Respectfully Submitted
THOMAS KENNEDY
By his attorney,

August 15, 2005

Alfred P. Chamberland
BBO#: 564151
9 Campus Lane -- PO Box 217
Easthampton, MA 01027-0217
(413) 529 - 0404

## CERTIFICATE OF SERVICE

I, Alfred P. Chamberland, hereby certify that the above document was provided to the Defendant's Counsel of Record via First Class US Mail, post pre-paid on August 15, 2005.

Edward J. McDonough, Jr., Esquire
Egan, Flanagan and Cohen, P.C.
67 Market Street - PO Box 9035
Springfield, MA 01102-9035

Alfred P. Chamberland